IN THE SUPERIOR COURT OF GUAM R COURT
OF GUAM
TRAFFIC DIVISION
2012 NOV -1 AM 11: 52
CK OF COURT

THE PEOPLE OF GUAM           )        Traffic Case No. 1C00768197
                             )
        vs.                  )
                             )        **DECISION AND ORDER**
JOHANNES H. YADA,            )
                             )
        Defendant.           )
                             )
_____)

## INTRODUCTION

This matter came for bench trial before the Honorable Alberto E. Tolentino, Magistrate Judge, on October 1, 2012. Defendant Johannes H. Yada appeared *pro se*. Gregorio Cepeda, a volunteer member of the Community Assisted Policing Effort (hereinafter "CAPE"), appeared and presented testimony of the facts and circumstances of the issuance of the citation before the Court. After the bench trial, the Court took the matter under advisement. After having reviewed the evidence and the applicable law, the Court now issues its Decision and Order.

## BACKGROUND

On or about July 12, 2012, at approximately 12:37 p.m., CAPE Volunteer Cepeda was conducting disabled parking enforcement at the Compadres Mall in Harmon when he observed a white Ford Ranger pick-up truck (Guam License Plate SNJ 1880) parked within an area described as a ramp-way between two designated disabled parking slots in front of and between the First Hawaiian Bank and King's Restaurant. The operator, Defendant Johannes Yada, was inside the vehicle. A citation was issued for blocking an access aisle and registered owner responsible for illegal parking, which are violations of Title 16 Guam Code Annotated sections 3401.1(b)(2) and 3404, respectively.

1

It further appeared that when confronted about parking in the area, the Defendant engaged in a verbal argument with the CAPE volunteer during which he threw the citation outside of the vehicle but which he reluctantly retrieved; however, the CAPE volunteer took the ticket and proceeded to include a violation for littering pursuant to 10 GCA §51205(d).

At trial, the parties agreed that the Defendant's vehicle was parked in front of the ramp and that the ramp area did not have any of the blue diagonal striped markings typical of access aisles for disabled parking.

## DISCUSSION

Defendant was issued a citation for violating certain provisions of 16 GCA § 3401.1 which state that "[a]ny person: . . .(2) blocking access to aisle(s) adjacent to accessible parking space(s) on public or private property made available for public use, is guilty of a violation." 16 GCA § 3401.1(b)(2)(2010). In addition, he was cited for violating 16 GCA § 3404 which provides: "[i]n any prosecution charging a violation of any regulation governing the standing or parking of a vehicle under this Title, proof by the Government that the particular vehicle described in the complaint was parked in violation of any provision of this Title, together with proof that the defendant named in the complaint was at the time of parking the registered owner of the vehicle, shall constitute in evidence a *prima facie* presumption that the registered owner of the vehicle was the person who parked or placed the vehicle at the point where, and for the time during which, the violation occurred." 16 GCA § 3404.

The Defendant was also cited for a violation of the provision of Guam law which states: "[a]ny person who violates this section while occupying a motor vehicle which is moving, or located on public property or a public right of way, shall be deemed to have committed a violation no (sic) only of this section, but of 16 GCA Chapter (Rules of the Road), and shall be guilty of a petty misdemeanor." 10 GCA §51205(d). The statute earlier provided that: "[i]t shall be unlawful for any person to willfully or negligently dump, deposit, throw, leave or abandon any litter upon any public highway, street, alley or

2

road, upon public parks or recreation areas or upon any other public property except as designated for such use, or upon property owned by another person without written permission of the owner, or into any bay, channel, harbor, river, creek, stream, reservoir, coastal waters, or other waters of the Territory." 10 GCA §51205(a).

### 1. Registered Owner Responsible

Preliminarily, the Court notes that 16 GCA § 3404 attaches liability to the registered owner of a vehicle found in violation of a non-moving traffic offense by erecting an evidentiary presumption that the registered owner is the person who operated the vehicle when the violation occurred. Because the Defendant admitted that he was the registered owner of the vehicle and that he himself had parked the vehicle at the time the alleged violation occurred, the Court does not believe that additional sanction under section 3404 is warranted or is what the Legislature had contemplated when the actual operator and registered owner of the vehicle were one in the same. Consequently, the Court dismisses this charge of the citation.

### 2. Blocking Access Aisle

The issue before the Court is whether the Defendant's vehicle was blocking an access aisle. However, given the specific argument made by the Defendant, the specific issue is whether the failure to properly paint the ramp-way in a manner and in accordance with the statute and ostensibly creating an ambiguity as to the nature and purpose of the particular area requires dismissal of the instant action.

### a. Requirements Under 16 GCA § 3401.1

Title 16 GCA section 3401.1 contains provisions governing the manner, location and other particularities of parking spaces for people with disabilities. These provisions state:

> (i) Accessible Parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance and comply with the Americans with Disabilities Act Accessibility Guidelines for Building and Facilities (ADAAG) technical specification § 4.6.2.

3

(j) As to parking lots constructed or repaved after the effective date of this Act, accessible parking spaces shall be at least 96 inches wide and 228 inches long with a minimum 60 inches-wide adjacent access aisle. Access aisles shall be identified and painted with diagonal stripes and a part of an accessible route to the building or facility entrance. Vehicle standing spaces and adjacent access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions. Access aisles and parking spaces shall comply with ADAAG technical specifications § 4.3 and § 4.6.3.

(k) Accessible parking spaces shall be designated as reserved by a sign showing

> (i) the International Symbol of Accessibility commonly known as the wheelchair symbol and specified in § 4.30.7 of the ADAAG;
> (ii) below the symbol, a statement that violators will be fined not less than $300 and not more than $500, and the vehicle may be towed;
> (iii) a reference to 16 GCA § 3401.1; and
> (iv) a statement that access aisles must not be blocked.

Spaces complying with ADAAG technical specification § 4.1.2(5)(b) shall also have an additional sign Van Accessible mounted below the symbol of accessibility. All signs referred to in this subsection (k) should be a maximum of 12 inches wide with edges having rounded corners. All signs shall be mounted on a post centered at the head of the parking space with the center of the International Symbol of accessibility seven (7) feet above the parking surface.

16 GCA § 3401.1(i)(j)(k).

In the instant case, it is undisputed that the Defendant's vehicle is parked within an area directly in front of a ramp-way between two disabled parking slots; however, he argues that because this area did not have the blue diagonal striping that it was not in compliance with the statutory requirements for designating the area as an access aisle and therefore the case should be dismissed.

In a case involving a citation that was issued for illegally parking in a designated handicapped accessible parking space, it was argued that the case should be dismissed because the parking sign failed to meet the height requirements in the statute. *People v. Pierson*, Superior Court of Guam Traffic Case No. 1C00715853 (Feb. 18, 2010). The court held that dismissal was not warranted even though the sign was erected over the seven foot requirement of the statute. *People v. Pierson*, Superior Court of Guam Traffic Case No. 1C00715853, Decision and Order at pp. 5-6 (Feb. 18, 2010). The court

4

reasoned that the purpose of the signage requirements, in particular the height requirement, was that the sign should be high enough above the ground and located at the front of a parking space so it can be seen from a driver's seat; and that the facts of the case adequately demonstrated that the Defendant had seen the sign and was aware that her vehicle was in a designated accessible parking space. *Id.* The court also found that minor deviations from the statutory procedure or technical violations may be excused if there is substantial compliance thereto and that because the sign at issue had substantially complied with the requirements of the statute the minor deviation of three inches over the height requirement was excusable. *Id.* (citation omitted).

The conclusion drawn from this case is that so long as there had been substantial compliance with the statute governing the dimensions and designations of disabled parking and access aisles for disabled parking; a person can be cited for and convicted of a violation of the disabled parking laws. However, such an inquiry raises the possibility of the unintended consequence that in some cases the purpose and intent of the disabled parking law may be frustrated.

**b. Substantial Compliance Analysis Inappropriate**

There may exist numerous ways that disabled parking stalls and access aisles on private property may be non-compliant with the statutory requirements regarding signage, dimensions, slope and location. Judicial notice of is made of other areas which demonstrate the troublesome lack of consistency in compliance with the requirements of the statute. Across from the Dededo Flea Market, the disabled parking sign in front of a restaurant is markedly left of center of the disabled parking space it is supposed to identify. A little further up the street in front of a fabric store, the disabled parking space is identified with a sign positioned directly centered in the slot; however, that space has diagonal blue-colored stripes and is the only parking space there. At a hotel in Harmon, the disabled parking sign is well below the seven foot height requirement and merely contains the International Symbol of Accessibility, commonly known as the wheelchair symbol, with the words "PARKING ONLY" but

5

properly posted at the head and center of the space. In front of the Dededo Mayor's Office, the designated parking areas and access aisles are colored yellow.

Given the wide disparity of the appearance, dimensions, and signage in areas ostensibly reserved to comply with the Americans with Disabilities Act it would seem to be an unwise endeavor to engage in a substantial compliance inquiry especially if it is not within a defendant's control whether or not the parking space is a disabled parking space or an access aisle for a disabled parking slot. In any particular case, a defendant may be invited to discover and claim that a variance in degree nullifies the intended use of the designated area.

The Court does believe that a substantial compliance analysis would be more appropriate if it was conducted to test a property owner's compliance with the ADA and the local statutes enacted by the Legislature to implement its mandates. *See e.g., Taijeron v. Kim*, 1999 Guam 16 (landlord's compliance with Guam Business License Law to maintain action against tenant); *Castino v. G. C. Coproration*, 2010 Guam 3 (mechanics' lien statute); *Quan Xing He v. Government of Guam*, 2009 Guam 20 (Government Claims Act). However, it should not be used to determine if a person is guilty of illegally parking in a disabled parking space or blocking and access aisle for a disabled parking space.

**c. Non-compliance of the Signage Requirements Does Not Excuse Illegal Parking**

While non-compliance with the signage or marking requirements of the statute may be a problem for the owners of the public or private property available for public use; it cannot provide a shield against liability for an un-qualified person who parks in a reserved area for disabled parking or for the person who blocks an access aisle for disabled parking. *Cf. City of Wichita v. Basgall*, 894 P.2d 876, 880 (Kan. 1995).

The Americans with Disabilities Act provides: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

6

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a)(1990). The intent of the Americans with Disabilities Act is to prevent discrimination against qualified people with disabilities in public accommodations. The mandates of 16 GCA §3401.1(i) through (k) are obviously directed at the owners of public or private property made available for public use. Accessible parking spaces serving a particular building must comply with the Americans with Disabilities Act Accessibility Guidelines (ADAAG) for buildings and facilities. *See* 16 GCA § 3401.1(i). Parking lots must contain accessible parking spaces of certain dimensions complying with the ADAAG. *See* 16 GCA § 3401.1(j). Finally, accessible parking spaces must be designated as reserved by a sign. *See* 16 GCA § 3401.1(k).

The remainder of section 3401.1 deals with fraudulent conduct *viz.* the procurement or possession of an authorization to use disabled parking, *see* 16 GCA § 3401.1(a)(d); the instances of misconduct regarding the unauthorized use of disabled parking spaces or the obstruction of the access aisles, *see* 16 GCA § 3401.1(b)(c)(d); the enforcement of its provisions, *see* 16 GCA § 3401.1(f)(h)(l); the penalties for violating its provisions, *see* 16 GCA § 3401.1(e)(g); and the education of the persons entitled to use disabled parking spaces, *see* 16 GCA § 3401.1(m).

The overall purpose and intent of the provisions of the statute then is to not only provide public accommodations for disabled persons but to also forbid the unauthorized use of a parking space reserved for people with physical disabilities or to block the access aisles serving these spaces. Allowing a person to park in such a reserved area merely on the premise that a defect exists in the dimensions of the spaces, or that the spaces are not colored blue, or that the sign reserving the parking space and access aisle for disabled individuals is placed in contravention of or variance with the statute's requirements would be to deny a disabled person from possibly using parking spaces or access aisles that were reserved for them.

7

Thus, while owners of public accommodations who are not in compliance with the signage or marking requirements of the statute may be liable for the violations and cited by the appropriate agencies; a person who otherwise impermissibly parks in a reserved area for disabled parking or who blocks an access aisle for disabled parking cannot obtain refuge because of the property owner's malfeasance.

Therefore, the Court holds that so long as there is some indication that the area in question is designated and reserved as a parking space and/or access aisle for the use of disabled persons, then no person may park within the designated accessible parking space(s) without a special license plate, removable windshield placard, or a temporary-windshield placard on public or private property made available for public use or block access to aisle(s) adjacent to accessible parking space(s) on public or private property made available for public use.

In this case, there was a sign clearly reserving the specific area of the Compadres Mall as parking spaces and a ramp access for disabled patrons of the Mall. The Defendant parked in an area that was clearly identified as a ramp-way between two disabled parking slots and which was a part of an accessible route to the building or facility entrance. As explained above, this is proscribed by 16 GCA § 3401.1(b)(2) and the Defendant is therefore guilty of its violation.

**3. Littering**

"It shall be unlawful for any person to willfully or negligently dump, deposit, throw, leave or abandon any litter upon any public highway, street, alley or road, upon public parks or recreation areas or upon any other public property except as designated for such use, or upon property owned by another person without written permission of the owner, or into any bay, channel, harbor, river, creek, stream, reservoir, coastal waters, or other waters of the Territory." 10 GCA §51205(a). Additionally, the law states: "[a]ny person who violates this section while occupying a motor vehicle which is moving, or located on public property or a public right of way, shall be deemed to have committed a violation no

8

(sic) only of this section, but of 16 GCA Chapter (Rules of the Road), and shall be guilty of a petty misdemeanor." 10 GCA §51205(d). The facts indicate that the Defendant did not abandon the alleged litter. Rather, he retrieved it at the behest of the CAPE volunteer. Thus, the Court finds no violation of the statute.

**CONCLUSION**

Based upon the foregoing, the Court finds the Defendant of a violation of Title 16 GCA § 3401.1(b)(2) and dismisses the remaining charges.

**SO ORDERED** this ____ day of November, 2012.

**ALBERTO E. TOLENTINO, Magistrate Judge**
**Superior Court of Guam**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the Office of the Clerk of the Superior Court of Guam. Dated at Hagatna, Guam.

NOV 1 2012

Leonard F. Ventura
Deputy Clerk, Superior Court og Guam